James D. NOAH, Appellant,

v.

The STATE of Texas, Appellee.

No. 46130.

Court of Criminal Appeals of Texas.

June 6, 1973.

Clyde W. Woody and Marian S. Rosen, Houston, for appellant.

Jules Damiani, Jr., Dist. Atty., Ronald L. Wilson and Norman Stevens, Asst. Dist. Attys., Galveston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for possession of heroin wherein the punishment was assessed at 50 years.

At the outset the appellant urges that the trial court erred in admitting into evidence "contraband which was recovered as a result of the unlawful chase and arrest of the Appellant in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution."

On February 2, 1971, Galveston City Police Officer Picard, in company with Officer Melanson, was on Pelican Island in an unmarked police vehicle—a 1966 Ford Mustang—when Picard saw the appellant alight from a 1970 Buick automobile at approximately 3 p.m. Shortly thereafter, he saw the appellant emerge from a brushy area accompanied by Wilburn Charles Hinson. Officer Picard testified he was on

Pelican Island as a result of information he had reecived.[1]

Picard observed the appellant and Hinson speak to each other for a few moments and then go to their respective cars. Picard followed the appellant, but was unable to keep up with him as the appellant was travelling in excess of 60 m.p.h. Picard then radioed a dispatch asking for assistance in stopping the appellant's vehicle, and then gave up the chase when the brakes on the Mustang failed. Officer Williams then took up the chase but soon lost sight of the appellant. Officer C. L. Adams, who heard the police dispatch, took up the chase, and chased the appellant for approximately 15 blocks down Avenue H at speeds up to 90 m.p.h. In the vicinity of 43rd Street and Avenue H, he saw the appellant throw a package from the car and he swerved to avoid hitting it, and he stopped the appellant between 44th and 45th Streets after firing a warning shot. Within three to five minutes after the appellant was placed in the custody of another officer, Adams returned to the place where the package had been thrown from the car and found it in the same position, with no other packages in the area nor people about when he arrived. Officer Rubio arrived and took pictures and attempted to lift fingerprints from the package but only obtained smudges.

A field test performed on the substance in the package showed it to be heroin. It was then packaged and mailed to the Department of Public Safety. The chain of custody was established and the chemist testified the substance was heroin and sufficient to make 625 capsules.

No contraband was found on appellant's person or in his automobile.

Testifying in his own behalf, the appellant, who had been convicted previously of a felony, denied any involvement with narcotics. He related that on the afternoon in question he was road testing his sister's automobile because of front end trouble; that he had only stopped to relieve himself in the brushy area on Pelican Island, and that he did not know Hinson. He denied knowing that he was being followed by Officer Picard, and, though he saw a marked police vehicle, he related he did not realize that he was the object of the pursuit until just shortly before he was stopped. He acknowledged he was speeding but insisted he was doing this as a part of the "road testing."

It is obvious from what has been said that the contraband in question was not obtained as a result of appellant's arrest and a search incident thereto, but, was recovered from the ground where it had been thrown by the appellant. We find no merit in appellant's contention. See King v. State, 416 S.W.2d 823, 824 (Tex.Cr.App. 1967), and cases there cited; Gonzales v. State, 461 S.W.2d 408 (Tex.Cr.App.1971); Hamilton v. State, 438 S.W.2d 814 (Tex. Cr.App.1969); Harless v. State, 473 S.W. 2d 519 (Tex.Cr.App.1971); Weeks v. State, 476 S.W.2d 310 (Tex.Cr.App.1972).

■ Appellant further contends ". . . the evidence was insufficient to prove possession of the alleged contraband . . . ."

This contention is based upon the fact that Officer Adams testified that the package was not in his sight for three to five minutes which time it took him to stop the appellant, place him in the custody of another officer, and walk back to the spot where he retrieved the package. Adams testified, however, the package was in the spot where he had seen appellant throw it, that no other packages were in the area, and he saw no other persons in that immediate area.

---

1. At the hearing on the motion to suppress, Picard testified that he had earlier seen the appellant at a place where narcotics had been found, that he had received information the appellant was a runner of narcotics and was directly working with "Bee Bop" Hinson, a former police officer, in the narcotic traffic.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to prove possession. See Floyd v. State, 494 S.W.2d 828 (Tex.Cr.App.1973).

Appellant also urges the contraband should not have been admitted into evidence since the proper chain of custody was not established.

There appears to have been an earlier trial which resulted in a mistrial. Appellant's argument is directed, not so much at the custody from the officers to chemist, but to the fact that the Court Reporter, Ray O'Neill, retained possession of the contraband from the first trial until the second trial. He points to the fact that O'Neill testified that he kept the exhibit in a locker and that there could have been times when the locker had been left unlocked when he was out of the office for a short time thereby rendering access to the locker available to other persons.

The Court Reporter testified that the exhibit had been in his exclusive possession from the time in question until he had turned it over to an Assistant District Attorney during the second trial and that it was in the same condition as when he first received it. He related the locker was kept locked most of the time and that he had the only key. The Assistant District Attorney, the chemist and the officers all testified the package appeared to be in the same condition as when they had earlier handled the same.

There was no showing that the exhibit had been tampered with or changed in any way. The exhibit was not rendered inadmissible. Appellant's objection on the ground urged went to the weight rather than the admissibility of the evidence. The exhibit was sufficiently identified at the trial by the various witnesses. See Walker v. State, 470 S.W.2d 669 (Tex.Cr. App.1971), and cases there cited; Mitchell v. State, 488 S.W.2d 786 (Tex.Cr.App. 1973), and cases there cited.

Appellant claims the trial court erred ". . . in allowing the introduction into evidence of the character and reputation of Wilburn Charles Hinson, thereby allowing the jury to infer guilt by association."

Picard related he had seen the appellant with Hinson. When asked who Hinson was, over objection, he replied ". . . a subject known to me through informants and through his personality . . . ." and, later, "known to me through informants and personal observation." Later, over objection, he testified that Hinson had been, as recently as 1967, a Galveston Police Officer assigned to the Vice and Narcotics Division.

While there is other evidence in the record as to Hinson's background, the foregoing is all of the testimony complained of that was produced before the jury. We cannot conclude that the court erred in permitting the same to be admitted.

Next, appellant complains the trial court erred ". . . in excusing a negro juror on a challenge for cause in violation of Articles 35.16, 1.03, 1.12, 1.13, and 45.16 V.A.C.C.P., and by depriving the Appellant of a fair and impartial jury represented by a cross-section of the community."

Mitchell Scurry, a prospective juror, indicated that he had known the appellant "since school days" and that he would prefer not to serve on the jury. Upon further interrogation, he acknowledged "it would be hard" for him "to be fair and impartial in a case like this," and, when asked by defense counsel, ". . . you can consider the facts, at this point," he answered, "No, sir."

Thereafter, the court sustained the State's challenge for cause. We do not find that the court abused its discretion in doing so. See Article 35.16(a)(9), Vernon's Ann.C.C.P.

Further, we find nothing in this record to support appellant's assertion in his brief that this prospective juror was a Negro, except an oral statement of his counsel in support of a motion for mistrial after the selection of the jury to the effect that "[t]he juror that was excused, was colored." Whether this reference was to Mitchell Scurry is not clear from this record.

■ Appellant's second thrust under this ground of error is that there was a "systematic exclusion" of Negroes from the jury panel. See Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). This claim is not supported by the record.

The exact number of Negroes on the jury panel is not clear from this record. Appellant asserts in his brief that the State exercised peremptory challenges on four prospective jurors and no Negro sat on the jury but does not direct our attention to any portion of the record to support this claim. We do find counsel's effort to have the court indicate, for purpose of the record, that the jury was "all white," but the court declined to do so until it observed the jury the next morning and we find nothing further in the record.

Under any circumstances, there is no showing that the State's exercise of peremptory challenges constituted a purposeful pattern of discrimination against Negro members of the jury panel. In absence of such a showing, the striking of Negroes as jurors in a particular case is not a denial of equal protection of the laws. Walker v. State, 454 S.W.2d 415, 418 (Tex.Cr.App. 1970); Jaquez v. State, 473 S.W.2d 530 (Tex.Cr.App.1971); Hardin v. State, 475 S.W.2d 254 (Tex.Cr.App.1972); Ridley v. State, 475 S.W.2d 769 (Tex.Cr.App.1972); Brown v. State, 476 S.W.2d 699 (Tex.Cr. App.1972).

■ Next, appellant claims the trial court " . . . committed error in that the offense for which he was convicted

was barred by virtue of the doctrine (sic) of carving, judicial and equitable estoppel and the double jeopardy provision of the Fifth and Fourteenth Amendements."

The ground of error is obviously multifarious and not in accordance with Article 40.09 § 9, Vernon's Ann.C.C.P., and presents nothing for review. Appellant acknowledges that his ground of error is not properly briefed but urges its consideration because the doctrines involved are interrelated. There is, however, another reason why this ground of error cannot be reviewed.

■ Prior to trial, appellant filed a "Plea in Bar" on the grounds set forth above. Attached to such plea were complaints and judgments relating to six convictions in the Municipal Court of Galveston involving offenses of fleeing from an officer, speeding, and certain other traffic offenses in violation of Galveston City ordinances or State law. Also attached is an order of the County Court No. I of Galveston County dismissing three of these causes on appeal and judgments of the same court reflecting that a James D. Noah entered a plea of guilty to two offenses of "Ran Stop Sign" and one of speeding and was fined $100 and court costs in each.

No evidence was adduced nor exhibits offered in support of the "Plea in Bar" before it was overruled. Attachments to pleadings do not prove themselves.

■ Nothing in appellant's testimony during the trial helps to shed any light on these convictions. Officer Adams did testify at the hearing on the motion to suppress that he had filed certain traffic offenses on the appellant and had appeared as a witness in "Corporation Court" in connection with such offenses, but there is nothing to show that Adams had reference to the convictions mentioned in appellant's pleadings. It is true that the complaints, which were not introduced into evidence, allege the offenses occurred "on or about

the 2nd day of February, A.D., 1971," but the State is not bound by the date alleged in the accusatory pleadings but may prove any date anterior to the day of the filing of such pleadings and not so remote that the prosecution is barred by the statute of limitations. See Rogers v. State, 169 Tex. Cr.R. 239, 333 S.W.2d 383 (Tex.Cr.App. 1960).

Further, appellant urges he was placed in double jeopardy because the automobile he was using at the time in question was forfeited by proceedings in Civil Action No. 71–H–578, the United States District Court for the Southern District of Texas, Houston Division. Attached to the Plea in Bar is apparently a copy of the original complaint and the original answer in such proceedings in which the appellant claimed he was the registered legal owner of the automobile and his sister was the equitable owner. No order or judgment is attached to the plea. Also attached is a copy of a letter to appellant's attorneys from the Department of Justice informing them that the petition for remission of the forfeiture of the automobile had been denied. Here again these attachments do not prove themselves. Therefore, we do not reach appellant's rather novel contention.

In light of the record before us, we are unable to pass upon any of appellant's contentions as to double jeopardy, etc.

Appellant also contends the court erred ". . . in failing to charge the jury with reference to the issues of possession, double jeopardy, circumstantial evidence and burden of proof . . . ." despite his timely presented objections and requested charges.

Here, again, the ground of error is multifarious and presents nothing for review. See Article 40.09 § 9, supra.

We observe that the court charged the jury that "[b]y the term 'possession' as used in this charge, is meant the care, control, custody, or management of the item in question." This charge was proper. See Garza v. State, 468 S.W.2d 440 (Tex.Cr.App.1971); Adair v. State, 482 S.W.2d 247 (Tex.Cr.App.1972); Collini v. State, 487 S.W.2d 132 (Tex.Cr.App. 1972); Alba v. State, 492 S.W.2d 555 (Tex.Cr.App.1973). The court also instructed the jury that the burden of proof was upon the State, beyond a reasonable doubt, and the appellant was presumed to be innocent, etc. And, the issue of former or double jeopardy was simply not raised before the jury. The appellant argues most vigorously on the court's failure to charge on circumstantial evidence. We find no merit in the contention. Officer Adams testified the appellant threw the package out of the car and he saw it land on the ground where he recovered it three minutes or so later, there being no other packages in the area and no other person observed in the immediate area where the package was found. This constituted direct evidence. See Floyd v. State, 494 S. W.2d 828 (Tex.Cr.App.1973). Further, we are not impressed with appellant's claim that since the Court Reporter couldn't testify that his locker, where the contraband was kept after the first trial, was locked every minute, that the court should have charged on the law of circumstantial evidence even in absence of any showing that the exhibit had not been tampered with in any manner.

Under any circumstances, we cannot conclude that the appellant was denied a fair and impartial trial by any claimed error in the court's charge. See Article 36.-19, Vernon's Ann.C.C.P.

Finding no reversible error, the judgment is affirmed.