Opinion issued March 2, 2006









     





In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00591-CR




VIDAL SAUCEDA JR., Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 178th District Court 
Harris County, Texas
Trial Court Cause No. 1012354




MEMORANDUM OPINION

          A jury convicted appellant, Vidal Sauceda, Jr. of possession of cocaine 
weighing more than four grams and less than two hundred grams by aggregate
weight,


 found two enhancement allegations true, and assessed punishment at 32
years in prison. In five points of error, appellant contends that (1) the trial court erred
“in proceeding to trial with appellant dressed in a jail uniform”; (2) the trial court
erred when it overruled appellant’s objections to two remarks made by the prosecutor
during closing argument; and (3) the evidence was legally and factually insufficient
to support his conviction.
          We affirm. 
Background
          In early January 2005, a confidential informant purchased cocaine from
“Robert” at 16811 City View, apartment 120 in Houston. A search warrant was
obtained for the apartment. The warrant was executed by Houston Police Department
narcotics officers, Sergeant D.J. Latin and Officer A. Vanderberry. At the time that
the warrant was executed, appellant, another man, a teenage boy, a woman, and a
small child were in the apartment. After announcing that they were police, Sergeant
Latin and Officer Vanderberry entered the residence. They saw appellant running
down the hallway. Appellant disobeyed the officers’ orders to stop. Sergeant Latin
noticed that appellant had something concealed in his hand. Officer Vanderberry
noticed that appellant’s hand was clenched. 
          The officers then saw appellant dive to the floor inside a bedroom and throw
something under the bed. Sergeant Latin retrieved a plastic bag from underneath the
bed; the bag contained what appeared to be crack cocaine and a razor blade. The only
other items under the bed were two shoe boxes. A lab later confirmed that the plastic
bag contained 5.7 grams of cocaine. The officers also recovered a safe from the
bedroom. Sixty-three grams of cocaine, a digital scale with cocaine residue on it, and
a pistol were found in the safe.
          Appellant was indicted for the offense of possession of cocaine, weighing more
than four grams and less than two-hundred grams, with the intent to deliver. The trial
court charged the jury on this offense and also on the lesser-included offense of
possession. The jury found appellant guilty of the lesser-included offense.
Jail Uniform 
          In his first point of error, appellant contends that the trial court erred by
proceeding to trial with appellant dressed in his jail uniform, in violation of his right
to the presumption of innocence. 
          Relevant to this point of error is the following exchange, which occurred
between the trial court and appellant before voir dire began:
THE COURT: Let the record reflect that Mr. Sauceda [the defendant] is here
in traditional orange jumpsuit for Harris County Jail inmates. I’ve talked to
Mr. Sauceda and I’ve told you, Mr. Sauceda , that you have a right to bring in
trial clothes, the clothes you were arrested in or clothes to be brought down by
someone else, correct? 
 
THE DEFENDANT: Yes.
 
THE COURT: And the clothes you were arrested in are still at the jail, right?
 
THE DEFENDANT: I guess they are.
 
THE COURT: I’ve been informed that they are.
 
THE DEFENDANT: All right.
 
THE COURT: Do you want to be dressed out in street clothes?
 
THE DEFENDANT: No. I’ll be all right like this.
 
THE COURT: Do you understand the negative impact it may have on a jury
panel if you’re sitting there in jail clothes, that they know you’re in jail?
 
THE DEFENDANT: All right.
 
THE COURT: Huh?
 
THE DEFENDANT: I’ve only got a t-shirt to wear with a pair of pants. That
ain’t being dressed right for court. I’ve got nothing. I don’t have nobody to
bring me nothing.
 
THE COURT: All right. Well, you have a right to put on what you were
wearing when you were arrested.
 
THE DEFENDANT: I’ll be fine like this, Judge.
 
THE COURT: You understand the negative impact the jury—that it might have
on a jury when they see you in jail clothes?
 
THE DEFENDANT: Yes, sir.
          Appellant relies on Estelle v. Williams, in which the United States Supreme
Court held that an accused cannot be compelled to stand trial before a jury while
dressed in identifiable prison clothes. 425 U.S. 501, 514, 96 S. Ct. 1691, 1697
(1976). The Texas Court of Criminal Appeals similarly held, in Randle v. State, that,
under Texas law, a defendant cannot be compelled to stand trial in prison garb. 826
S.W.2d 943, 945 (Tex. Crim. App. 1992). Thus, Texas law and federal law are the
same in that both prohibit compelling a defendant to be presented to the jury in jail
clothing. 
          Failure to make an objection to the court, however, is sufficient to negate the
presence of compulsion necessary to establish a constitutional violation. Estelle, 425
U.S. at 512–13, 96 S. Ct at 1697. Indeed, in Estelle, the Supreme Court held that the
failure of the defendant in that case to object to appearing in jail clothes negated any
compulsion otherwise raised in the record. Id. 425 U.S. at 504, 96 S. Ct. at 1693. 
Therefore, a defendant must object to being tried in jail attire or waive his right to
complain. Randle, 826 S.W.2d at 945 (citing Estelle, 96 S. Ct. at 1695). 
          Appellant argues that he never “effectively waived his right not to be tried in
a jail uniform” because it was “undisputed that the appellant was arrested in clothing
which would not have been appropriate to wear in trial before a jury.” He asserts that
his “acquiescence to be tried in a jail uniform cannot constitute waiver of the right not
to be so tried, where the appellant had at his disposal no reasonable alternative.” 
          Despite his contentions, the record shows that appellant never objected to being
tried in his jail uniform. In fact, it appears that it was the trial court who raised the
issue of appellant’s attire. The exchange between the trial court and appellant set
forth above shows that appellant had ample opportunity to object and that he did not. 
Because he did not object, any “compulsion” to wear the jail uniform raised in the
record was negated by appellant’s lack of objection. See Estelle, 425 U.S. at 512–13,
96 S. Ct at 1697. 
          We also note that one court of appeals has held, in a case in which the
defendant did object to being tried in his jail clothes, that the defendant forfeited the
right to complain of being tried in jail clothes after he declined both the court’s
invitation to change into the jogging suit that he was wearing when he was arrested
and an offer of “street clothes.” See Johnson v. State, 838 S.W.2d 906, 909 (Tex.
App.—Corpus Christi 1992, pet. ref’d). Relatedly, this and at least one other court
of appeals have held that a defendant’s wearing of less-than-desirable clothing during
trial does not implicate the defendant’s right to a presumption of innocence. See
Sullivan v. State, 997 S.W.2d 374, 375–76 (Tex. App.—Beaumont 1999, pet. ref’d)
(concluding that there was no deprivation of rights in case in which defendant wore
t-shirt depicting a scantily clad woman during jury selection); Bryant v. State, 982
S.W.2d 46, 48 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (determining that
defendant’s appearing in same dress for two days of trial did not infringe on
presumption of innocence by suggesting to jury that she was in custody). In sum, it
would not be appropriate to reward appellant for choosing to implicate his right of
presumption of innocence by wearing his jail uniform and refusing to wear available
street clothing that would not otherwise implicate that right.
          We overrule appellant’s first point of error.
Jury Argument
          In his second and third points of error, appellant complains that the trial court
erred by overruling the defense’s objections, made during closing argument, to two
remarks by the prosecutor that the defense was “muddying the waters” and referring
to evidence offered by the defense as a “smokescreen.” 
          A bit of background is helpful in understanding this issue. On cross-examination of the police officers, the defense elicited testimony that the police had
not tested any of the items recovered at the apartment for fingerprints, including the
plastic bag that appellant threw under the bed and the razor blade contained in the
bag. The police testified, however, that it was not common practice to collect
fingerprint evidence in such cases. Sergeant Latin and Officer Vanderberry explained
that they did not need fingerprints to link appellant to the cocaine found under the bed
because they had seen him toss it there. 
          Related to this issue, the defense proffered the testimony of a private
investigator, who was a former law enforcement officer, as a fingerprint expert. The
expert opined that he thought that it would have been both appropriate and helpful
to have tested certain of the items recovered for fingerprints, including the plastic bag
and the razor blade, to assist in determining which individuals had exercised “care,
custody, and control” over the items. He opined that both the plastic bag containing
the cocaine and the razor blade found inside the bag were the types of items that were
“conducive” to fingerprints.
          During its closing argument, the defense touched on the issue of fingerprints.
The defense suggested that the police had not been careful in handling the items
recovered at the apartment to preserve any fingerprints, pointed out that several of the
items had been identified by the defense’s expert as being “susceptible” to
fingerprints, and asserted that it would have taken minimal effort for the police to
have had the items tested for fingerprints.
          With this background, we set forth the portions of the State’s closing argument
of which appellant complains: 
[THE PROSECUTOR]: And, you know, it was pretty frustrating when the
defense calls in a private investigator on a couple of hours’ notice to come talk
about fingerprints, to muddy the waters.
 
[DEFENSE COUNSEL]: Judge, I object to the use of the term “muddying the 
water.”
 
THE COURT: Overruled.
 
[THE PROSECUTOR]: It’s a smoke screen for the benefit of you guys.
 
[DEFENSE COUNSEL]: Objection to the use the term “smoke screen,” Judge.
 
THE COURT: Overruled.
The prosecutor then went on to explain why fingerprints were not necessary to prove
the State’s case. 
          The State may not use closing argument to strike at a defendant over the
shoulders of his counsel or to accuse that counsel of bad faith. Fuentes v. State, 664
S.W.2d 333, 335 (Tex. Crim. App. 1984). The State responds that its jury argument
responded to the argument of the defense counsel relating to the fingerprints issue.
          The Court of Criminal Appeals analyzed an analogous jury argument in Mosley
v. State, 983 S.W.2d 249, 258–59 (Tex. Crim. App. 1998). The prosecutor in Mosley
argued that the defense counsel was asking the jury to “take a side road, a series of
side roads, rabbit trails, and a rabbit trail that will lead . . . to a dead-end.” Id. at 258. 
The Mosley court warned that defense counsel’s “legitimate arguments” cannot serve
as a basis for permitting prosecutorial comments that “cast aspersion on defense
counsel’s veracity.” Id. at 259 (citing Dinkins v. State, 894 S.W.2d 330, 357 (Tex.
Crim. App. 1995)). Though the rule is not precise, the court explained that “a
prosecutor runs a risk of improperly striking at a defendant over the shoulder of
counsel when the argument is made in terms of defense counsel personally and when
the argument explicitly impugns defense counsel’s character.” Id. Without expressly
finding error, the Mosley court assumed that the prosecutor’s comments, which are
of the same ilk as the remarks in this case, were inappropriate. Id. Based on such
assumption, the court conducted a harm analysis. Id. Mosley clarified that the proper
test for harm is that found in Rule 44.2(b) of the Texas Rules of Appellate Procedure. 
Id.; see Tex. R. App. P. 44.2(b) (providing that any non-constitutional “error, defect,
irregularity, or variance that does not affect substantial rights must be disregarded”). 
          Using federal case law as guidance, the Mosley court adopted the following
three-factor test to apply when determining whether this type of error was harmful
or harmless: (1) the severity of the misconduct; (2) the measures adopted to cure the
misconduct; and (3) the certainty of conviction without the misconduct. Mosley, 983
S.W.2d at 260. 
          In applying the first factor, the severity of the misconduct, we note that the
remarks did not accuse the defense counsel of lying or suggest that any evidence was
manufactured. See id. Rather, they responded to opposing counsel’s argument that
the police had conducted an incomplete or inefficient investigation of the case
because they had not done fingerprint analysis. “At most, the comments indicate that
the defense may be attempting to distort the jury’s view of the evidence through
clever argument.” Id. We conclude that the misconduct here, as in Mosley, was
modest or “mildly inappropriate.” See id. Accordingly, the severity of the
misconduct does not weigh heavily in appellant’s favor. 
          Regarding the second factor, we consider the measures adopted to cure the
misconduct. This case is similar to Mosley in that (1) the trial court did not take any
curative action and (2) the prosecutor continued with his remarks after the trial court
overruled the defense’s objections, making further reference to the fingerprint defense
as a “rabbit trail.” 
          Nevertheless, we also conclude, as did the Mosley court, that the third factor, 
the certainty of conviction without the misconduct, “weighs heavily in favor of the
State.” Id. Here, the jury heard evidence that (1) appellant ran from the officers with
something in his hand; (2) Sergeant Latin and Officer Vanderberry saw appellant fall
to the bedroom floor and throw an object under the bed; and (3) the object recovered
was a plastic bag, which later was determined to contain 5.7 grams of cocaine. Given
the strength of evidence supporting the conviction, we conclude that appellant’s
conviction was fairly certain, regardless of the prosecutor’s comments. After
applying the Mosely factors, we hold that, given the mildness of the comments and
the strength of the State’s case, any error related to the trial court’s overruling of the
defense’s objections was harmless. 
          We overrule appellant’s second and third issues.
Legal and Factual Sufficiency
          In his fourth and fifth issues, appellant contends that the evidence was legally
and factually insufficient to support his conviction.
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or if the contrary evidence is so strong that the
standard of proof of beyond a reasonable doubt could not have been met. Escamilla
v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). As the evaluator of credibility and
demeanor, the fact-finder alone determines what weight to place on contradictory
testimonial evidence. Id. at 408–09. The fact-finder may choose to believe all, some,
or none of the testimony presented. See id. In conducting a factual-sufficiency
review, we must discuss the evidence that, according to the appellant, most
undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003).
B.      Elements of the Offense
          A person is guilty of second-degree felony possession if he knowingly or
intentionally possesses a controlled substance in an amount greater than four grams
and less than two hundred grams. Tex. Health & Safety Code Ann. § 481.115(d)
(Vernon 2003). Cocaine is a controlled substance as defined by the statute. Tex.
Health & Safety Code Ann. § 481.102(3)(D) (Vernon Supp. 2005). “Possession”
is statutorily defined as the “actual care, custody, control, or management” of the
substance in question. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon
Supp. 2005). To support a conviction for unlawful possession of a controlled
substance, the State must prove both that the accused exercised care, custody, control,
or management of the substance and that he knew that he possessed a controlled
substance. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). 
C.      Analysis
          In support of his sufficiency challenges, appellant generally avers that the
evidence was legally and factually insufficient to support his conviction because “the
testimony of [Sergeant Latin and Officer Vanderberry] incriminating the appellant
was not credible.” The appellant contends that the jury must have found the officers’
testimony to lack credibility because “the jury rejected Sergeant Latin’s testimony
that the cocaine could not have been for personal use” because the jury “found the
appellant guilty only of simple unlawful possession.” 
          A basic tenet of legal-and factual-sufficiency review is that an appellate court
may not reweigh the evidence—including reviewing the credibility of witnesses. See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (legal sufficiency);
Cain, 958 S.W.2d at 407 (factual sufficiency). Even if the jury did not believe any
of the testimony supporting the element of intent to deliver, a jury may believe all,
some, or none of any witness’s testimony.


 See Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986) (recognizing that jury “could choose to believe or not believe
the witnesses, or any portion of their testimony”). Thus, the jury was free to believe
the testimony supporting possession, while disbelieving the evidence supporting that
the possession was with intent to deliver.
          Sergeant Latin and Officer Vanderberry each testified that appellant ran from
them, despite the officers’ announcement that they were police and their commands
that he stop. Sergeant Latin testified that appellant was concealing something in his
hand. Officer Vanderberry testified that appellant had his hand clenched. Both
officers told the jury that they saw appellant fall to the floor inside a bedroom and
throw something under the bed. The officers testified that Officer Latin lifted the bed
and recovered a plastic bag containing a razor blade and what appeared to be crack
cocaine. Other testimony was presented confirming that the bag did in fact contain
5.7 grams of cocaine. 
          In support of his sufficiency challenges, appellant points out that Sergeant
Latin’s and Officer Vanderberry’s version of the events was not corroborated. 
Appellant points out that the “bag containing the cocaine was capable of being
examined for fingerprints to confirm the appellant’s alleged possession, but the bag
was never so examined.” Appellant also calls attention to the fact that he was “not
listed as a suspect on the search warrant, and had not been involved in [the]
controlled buy conducted on the premises a few days earlier.”
          It is well-established that a conviction may be based on the testimony of a
single eyewitness. Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); 
Lewis v. State, 126 S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet. ref’d). The
testimony of an officer, standing alone, is sufficient to establish unlawful possession. 
See Noah v. State, 495 S.W.2d 260, 263 (Tex. Crim. App. 1973). The Court of
Criminal Appeals and several courts of appeal have held that similar evidence has
been sufficient to support a finding that the defendant possessed a controlled
substance. See id. (police officer saw defendant throw package from moving car);
Sneed v. State, 875 S.W.2d 792, 795 (Tex. App.—Fort Worth 1994, no pet.) (officer
saw defendant throw cocaine to floor); Ortega v. State, 861 S.W.2d 91, 95 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d) (officer saw defendant drop something
on car floorboard). 
          Viewing the evidence in the light most favorable to the jury’s verdict, we
conclude that a reasonable jury could have found that the evidence established
beyond a reasonable doubt that appellant was guilty of possession of cocaine in an
amount greater than four grams and less than two hundred grams. See King, 29
S.W.3d at 562. Additionally, upon viewing all of the evidence in a neutral light, we
conclude that the evidence is not so weak that the verdict is clearly wrong and
manifestly unjust that the standard of proof beyond a reasonable doubt could not have
been met. See Escamilla, 143 S.W.3d at 817. We hold, therefore, that the evidence
is legally and factually sufficient to sustain appellant’s conviction.
          We overrule appellant’s fourth and fifth points of error. 
Conclusion
          We affirm the judgment of the trial court. 




                                         Laura Carter Higley
                                         Justice 

Panel consists of Justices Taft, Higley, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).