Directory: J:\JudgeSharp\CMorales\Memo drafts\Veltz












Opinion issued April 29, 2010

 

 



In The

Court
of Appeals

For The

First
District of Texas

————————————

No. 01-09-00803-CR

No. 01-09-00804-CR

———————————

HIRAM VELTZ, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal
from the 184th District Court 

Harris
County, Texas



Trial Court Case Nos. 1136989 & 1136990

 



 

MEMORANDUM OPINION

          Hiram
Veltz was indicted for possession of heroin with intent to deliver[1] and possession of cocaine.[2]  The jury found him guilty as charged on the
cocaine case and guilty of the lesser-included offense of possession without
the intent to deliver on the heroin case.[3]  Appellant pled true to habitual felony
offender enhancements paragraphs in each indictment,[4] and the court sentenced him
to twenty-six years in prison for the possession of heroin offense and four
years in prison for the possession of cocaine offense.  We determine whether the evidence is legally
sufficient to support both convictions. 
We affirm the judgments in both causes.  

Background

Undercover
narcotics officers John Huston and Bradley Craig of the Houston Police
Department were jointly conducting surveillance on appellant.  The officers were in separate vehicles but
were in radio communication with one another.  From his unmarked car, Huston saw appellant come
out and get into the driver’s seat of a car that had pulled up to the house at
which appellant was located and drive away. 
Returning a short time later, appellant ran into the house, stayed
briefly, came back out, and then drove to a nearby convenience store, with the
same passenger still in the car.  Huston
saw appellant fail to use his turn signal while driving to the store and
radioed a uniformed officer, Theodore Gerstle, to contact appellant about the
traffic violation.  Huston continued to
watch appellant.  

When
Gerstle, who was in a marked police unit, pulled into the parking lot on the
side of the store, Huston moved closer so that he could have a better look.  Huston radioed Gerstle to detain
appellant.  According to Huston, appellant
had left the store and was walking back to the car when he turned and looked at
Gerstle, who was still sitting in the police car.  Appellant was on the passenger’s side of
Gerstle’s car.  Huston saw appellant
reach into his left rear pocket, pull out a round object, and drop it behind
him in some grass.  Gerstle was not aware
that appellant had dropped anything and, while Gerstle was handcuffing
appellant, Huston radioed Gerstle and told him to “check that area right there”
because appellant had dropped a round object.  Huston saw Gerstle recover the object that
appellant had dropped.  

Officer
Craig saw appellant walking northbound away from the store and saw Gerstle pull
up to appellant.  Unlike Huston, Craig
never saw Gerstle’s car in the parking lot; according to Craig, Gerstle stopped
his car in the street.  Appellant was on
the other side of another vehicle, on the passenger side of Gerstle’s car, in a
grassy area, where there was a ditch and fence. As Gerstle got out of his car,
Craig saw appellant reach into the back pocket area of his pants and drop
something.[5]  Something came out of appellant’s hand, but
Craig was too far away to see what it was that appellant dropped. 

Officer Gerstle
first saw appellant outside the store, in the parking lot.  Appellant was on the left-hand “roadway” side
of the store, walking north, parallel to a street.  Gerstle pulled up “into the driveway” so that
appellant was located on the passenger side of Gerstle’s car.  Gerstle told appellant to “come here”;
appellant stopped walking but did not come to the police officer.  Gerstle got out of the police car, walked
around to appellant, and then handcuffed him and put him in the back of the car.
 A “few seconds” after handcuffing appellant,
and after receiving instructions from Huston, Gerstle found “a round circle,
tobacco can container” in the grass in the area Huston had described.  Gerstle saw no other round container in the
grass in that area, nor did he see any trash or anything else in that
area.  Gerstle also saw no other person
in that area.

Inside the
round container recovered by Gerstle were twenty small Ziploc baggies of
heroin, weighing 3.65 grams, and one small Ziploc baggie of cocaine, weighing
less than one gram. 




Legal Sufficiency

 

          In
his sole issue in both cause numbers, appellant asserts that the evidence is
insufficient to establish that he exercised care, custody or control over the
cocaine and heroin because there was conflicting evidence in the testimony of
the officers and because the container was never fingerprinted. While appellant
does not specify whether he is challenging the legal or factual sufficiency of
the evidence, he only cites to the standard of review for legal sufficiency and
he asks only for an acquittal, which is the remedy for legal
insufficiency.  We therefore review his
issue as a challenge to the legal sufficiency of the evidence.

A.      Standard of
review

          In
assessing legal sufficiency, this Court must consider the entire trial record
to determine whether, viewing the evidence in the light most favorable to the
verdict, a rational jury could have found beyond a reasonable doubt that the
accused committed all essential elements of the offense.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 S.W.3d 608, 612
(Tex. Crim. App. 2001).  We must
“evaluate all of the evidence in the record, both direct and circumstantial,
whether admissible or inadmissible.”  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  

In conducting a legal-sufficiency
review, we do not reevaluate the weight and credibility of the evidence, but
ensure only that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex.
Crim. App. 1993).  It is the function of
the trier of fact to resolve any conflict of fact, to weigh any evidence, and
to evaluate the credibility of any witnesses. 
See Dewberry, 4 S.W.3d at 740; Adelman v. State,
828 S.W.2d 418, 421 (Tex. Crim. App. 1992); see also Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (quoting Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988)). 
We therefore resolve any inconsistencies in the evidence in favor of the
verdict, Matson, 819 S.W.2d at 843, and “defer to the jury’s credibility
and weight determinations.” Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006). 

B.      “Links” doctrine

Before a
person may be convicted of possession of a controlled substance, the evidence
must prove beyond a reasonable doubt that the person exercised control,
management, or care over the substance and that the person knew that the matter
possessed was contraband. See Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2009); Poindexter
v. State, 153 S.W.3d
402, 405 (Tex. Crim. App. 2005).  The
evidence may be direct or circumstantial, but it must establish that the
defendant’s connection with the drug is more than fortuitous.  Evans
v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  If a person does not exclusively possess the
place where the contraband is found, then independent facts and circumstances
must link him to the contraband.  Poindexter, 153 S.W.3d at 406.  It is “not the number of links that is
dispositive, but rather the logical force of all the evidence, direct and
circumstantial.”  Evans, 202 S.W.3d at 162.  In
evaluating the links between an accused and the contraband, we are not to
reweigh the evidence or make credibility determinations, but rather must defer
to the jury’s  conclusions and its
choices regarding inferences from the evidence to accept or reject; the jury
“trump[s] both trial and appellate judges on weight-of-evidence determinations.”  Id.
at 164, 165.  

C.      Analysis

Appellant argues the evidence is
insufficient to link him to the cocaine and heroin because (1) Craig was not
credible because he was too far away to see the drop and “failed to report to
any other officer” that he had seen the drop “at the time of the alleged incident,”[6]
(2) there was conflicting evidence between Craig and Huston as to whether
Gerstle stopped in the parking lot or on the street, and (3) the container was
recovered from an open, unkempt area near a store in a neighborhood known for
drug activity, but it was never fingerprinted. 


We must note first that the absence
of a single possible link, such as fingerprints, does not preclude a jury from
determining that existing evidence links an accused to contraband sufficiently
to find the accused guilty of possession. 
See Evans, 202 S.W.3d at
164.  We note also that it is within the
jury’s exclusive province to assign the weight to be given to testimony, to
determine the credibility of the witnesses, and to reconcile conflicts in the
evidence.  See Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979) (providing that jury is exclusive judge of
facts proven and of weight to be given to testimony); Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000)
(holding that jury is exclusive judge of weight and credibility, and that it is
within jury’s exclusive province to reconcile conflicts).  The jury may believe all, part, or none of a
witness’s testimony.  Chambers v. State, 805 S.W.2d 459, 461
(Tex. Crim. App. 1991).  A legal
sufficiency review, moreover, does not involve any weighing of the favorable
and non-favorable evidence.  Cardenas v. State, 30 S.W.3d 384, 389
(Tex. Crim. App. 2000).  Rather, the
appellate court must defer to the jury’s weight and credibility determinations
and resolve inconsistencies in the evidence in favor of the verdict.  See Marshall, 210 S.W.3d at 625; Evans, 202 S.W.3d at 164, 165; Matson,
819 S.W.2d at 843.  

In the present case, viewing the
evidence in the light most favorable to the verdict, and giving deference to
the jury’s weight and credibility determinations, the evidence shows that (1)
appellant took a round container from his back pocket and dropped it into a
grassy area near him as an officer was approaching him, (2) “seconds” later,
the dropped round container was recovered from the grassy area, (3) the
container recovered was the only round container—and the only object— in the
grassy area, (4) there was no other person in that area when the container was
dropped or recovered, and (5) the container held heroin and cocaine.  We conclude that the evidence was sufficient
for a rational jury to conclude beyond a reasonable doubt that appellant
exercised care, custody, control, or management over the cocaine and heroin.  See Noah
v. State, 495 S.W.2d 260, 263–64, 266 (Tex. Crim. App. 1973) (holding that
when officer saw defendant throw package out of car and land on ground, package
was recovered minutes later, there were no other packages in area and no other
person in immediate area, this was direct evidence of possession and evidence
was legally sufficient); Blackmon v. State, 830 S.W.2d 711,714 (Tex.
App.—Houston [1st Dist.] 1992, no pet.) (holding that when one officer saw
defendant throw object into grassy area and directed another officer to search
area, and second officer picked up only object in area—matchbox found to
contain cocaine—evidence was legally sufficient to show possession).  We hold that the evidence is legally
sufficient to support the jury’s verdicts on both charges of possession of a
controlled substance and we overrule appellant’s sole issue in both causes.

Conclusion

We affirm the judgments of the trial court in each cause number.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel consists of Justices Keyes,
Sharp, and Massengale.

Do not publish.   Tex. R. App. P. 47.2(b).











[1]              More than one gram but less
than four grams. Trial court cause number
1136989; appellate court cause number 01-09-00803-CR. See Tex. Health & Safety
Code Ann. §§ 481.112(a),(e), 481.102 (Vernon Supp. 2009).

 





[2]              Less than one gram. Trial court cause number 1136990; appellate court cause
number 01-09-00804-CR.  See id. §§ 481.115(a), (b)(Vernon Supp.
2009), 481.102.

 





[3]              See id. §§ 481.115(a), (c). 

 





[4]              See
Tex. Penal Code Ann. § 12.42
(a)(2), (d) (Vernon Supp. 2009). 

 





[5]              Craig first said that he saw appellant make a
“throwing” motion, but, when asked how far the item was thrown, Craig stated
that it would be more accurate to say that the item was “dropped.”  





[6]              We note that the record does
not establish that Craig “failed to report to any other officer” that he had
seen the drop at the time of the incident. 
Appellant cites us to a portion of the record in which Craig stated that
he did not write the police report and that he did not meet face-to-face with
the other officers present at the scene but only spoke to them by radio.  Appellant then asserts that neither of the
other officers testified about communicating with Craig.  However, Huston testified that Craig was also
present on the surveillance and that they were in communication by radio.  Huston also testified that “[t]here is
another person that observed [appellant] drop the object . . . I’m not the only
one.”  While the record does not
establish when Craig told Huston that he had seen the drop—whether at that time
or at a later time — the timing of Craig’s “report,” and any implications to be
drawn therefrom, ultimately was a credibility issue for the jury to determine.