**Opinion issued April 23, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-14-00053-CR**

————————————

**JOSE AMILPAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1334791**

---

**MEMORANDUM OPINION**

Appellant Jose Amilpas was charged by indictment with felony possession of more than four grams and less than 200 grams of cocaine with intent to deliver. The indictment included two enhancement allegations for felony possession of a controlled substance and felony possession of a weapon. After a jury found

Amilpas guilty, Amilpas and the State agreed to a plea bargain on sentencing—30 years' confinement. Once Amilpas pleaded true to the enhancement allegations, the trial court sentenced him to 30 years' confinement in prison, in accordance with the plea bargain. On appeal, Amilpas contends that the evidence was legally insufficient to support his conviction. Amilpas also complains that the trial court erred by (1) denying his request to unseal a court order requiring Amilpas's cell phone service provider to disclose to police data allowing them to ascertain the location of his cell phone and (2) overruling his objection to the prosecutor's allegedly improper argument during closing. We affirm.

## Background

On January 11, 2012, Houston Police Department's East Side Tactical Unit began searching for Amilpas to serve an arrest warrant for a felony evading arrest charge. Unable to locate Amilpas, they requested assistance from Officer Vigil of the Houston Police Department Criminal Intelligence Division.

Officer Vigil testified that, on January 26, 2012, his division obtained a "probable cause based court order," signed under seal by a judge, which ordered Sprint-Nextel to provide information regarding Amilpas's cell phone. Specifically, Officer Vigil obtained information showing the signal strengths from various cell towers in relation to Amilpas's phone and used it to triangulate possible locations

of Amilpas's cell phone. Based on this data, Officer Vigil formed the belief that Amilpas could be found at a local cell phone store.

Officer Vigil and Sergeant Vega of the Houston Police Department drove to the store, where Officer Vigil saw and recognized Amilpas and entered the store with Sergeant Vega immediately behind him. Officer Vigil testified that he identified himself as a Houston police officer as he entered the store. At that point, Amilpas turned around, reached into his waistband, and threw a small object over the store counter. Officer Vigil also testified that there were at least two other people in the store, but neither was standing near Amilpas and he did not see either of them throw anything into the area where Amilpas had thrown the object.

Sergeant Vega's testimony was consistent with Officer Vigil's. He testified that Amilpas looked "surprised" when he and Officer Vigil entered the store. When Sergeant Vega identified himself as an officer and directed Amilpas to "get on the ground," Amilpas did not comply. Rather, he turned around, reached into his waistband, pulled out what appeared to be a knife, and threw it over the counter before complying with the officers' commands to get on the ground. Vega testified that he saw the general area in which the object landed and that Amilpas's girlfriend was standing by the counter talking to a store employee, which was not "very close" to Amilpas.

After Amilpas was handcuffed, Sergeant Vega directed Officer Yanez of the Houston Police Department to find the object that Amilpas had thrown over the counter. Officer Yanez testified that he walked behind the counter to the location where Sergeant Vega said that Amilpas had thrown an object, and he found a clear plastic bag, which contained seven smaller bags. The smaller bags contained a powdery substance, which Officer Yanez believed was cocaine. The officers also found that Amilpas was carrying $3,070 in cash.

Mona Colca, a criminalist with the Houston Police Department Crime Laboratory, tested the powdery substance recovered at the scene and determined that it was 64.7 grams of cocaine. The lab report containing the test results was admitted at trial.

Officer Aguirre of the Houston Police Department testified that finding that quantity of cocaine packaged in seven individual bags and $3,070 in cash on a defendant's person indicates that the defendant is a drug dealer and intends to sell the individual bags of cocaine. According to Officer Aguirre, the cocaine had an approximate street value of $2,200 to $3,000.

**Sealed Court Order for Disclosure of Amilpas's Cell Phone Information**

In his first and second issues, Amilpas complains that the trial court erred in denying his request to unseal the court order directing Sprint-Nextel to disclose Amilpas's cell phone data. He contends in his first issue that this prevented him

from evaluating the evidence against him, subpoenaing rebuttal witnesses, and questioning witnesses in violation of his right to confront witnesses guaranteed by the Sixth Amendment of the United States Constitution and Article 1 Section 10 of the Texas Constitution. In his second issue, Amilpas argues that the same ruling deprived him of due process of law.

## A.     Applicable Law

Section 18.21 of the Texas Code of Criminal Procedure provides that a police officer from an incorporated area may seek, by court order signed by a district judge, pen register information, trap and trace devices, and mobile tracking devices. TEX. CODE CRIM. PROC. ANN. art. 18.21 (West Supp. 2014). A pen register "means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, if the information does not include the contents of the communication." TEX. CODE CRIM. PROC. ANN. art. 18.21, § 1(6) (West Supp. 2014). A prosecutor with jurisdiction in a county "may file an application for the installation and use of a pen register . . . ." *Id.* § 2(a) (West Supp. 2014). The application must be in writing, under oath, include the subscriber name, information, telephone number, and location of the device, and "state that the installation and use of the device or equipment will likely produce information that is material to an ongoing criminal investigation." *Id.* § 2(c). "On

presentation of the application, the judge may order the . . . use of the pen register . . . and, on request of the applicant, the judge shall direct in the order that a communication common carrier or a provider of electronic communications service furnish all information, facilities, and technical assistance necessary to facilitate the installation and use of the device . . . ." *Id.* § 2(d). Additionally, the statute requires that "[t]he district court shall seal an application and order granted under this article" and includes no mention of any process by which the application or order may be unsealed. *Id.* § 2(g).

Article 38.23(a) of the Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). The primary purpose of article 38.23(a) is to deter unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution. *Wilson v. State*, 311 S.W.3d 452, 459 (Tex. Crim. App. 2010).

However, if the evidence seized is sufficiently attenuated from the violation of the law, the evidence is not considered to be obtained in violation of the law for the purpose of article 38.23. *Johnson v. State*, 871 S.W.2d 744, 750 (Tex. Crim. App. 1994). To determine whether the discovery of physical evidence is

6

sufficiently attenuated from the violation, we consider: (1) the temporal proximity of the violation of law and the seizure of physical evidence, (2) the presence of intervening circumstances, and (3) the purposefulness or flagrancy of the police misconduct. *See State v. Mazuca*, 375 S.W.3d 294, 301–07 (Tex. Crim. App. 2012).

In *Mazuca*, the trial court found that the officers' stop of the car in which Mazuca was a passenger was illegal. *Id.* at 296–97. Accordingly, the trial court suppressed ecstasy that the officers discovered in Mazuca's pocket during the detention, and the court of appeals affirmed. *Id.* at 298–99. The Court of Criminal Appeals reversed, concluding that the discovery of the ecstasy was sufficiently attenuated from the illegal stop. *Id.* at 308. The Court of Criminal Appeals reasoned that the officers' discovery of Mazuca's outstanding arrest warrants between the time they made the illegal stop and the time they found the ecstasy was an intervening circumstance and the officers' misconduct was not "particularly purposeful and flagrant." *Id.*

**B.    Analysis**

Amilpas's counsel first learned during trial of the existence of the order directing disclosure of Amilpas's cell tower data. Amilpas's counsel argued that had he known of the order earlier, he would have moved to suppress any evidence that the officers discovered after arriving at the cell phone store. Amilpas argued

that the officers' use of Amilpas's cell phone data to locate him constituted an illegal search. He requested that the trial court unseal the order, and he moved for a continuance. The trial court denied Amilpas's motions to suppress and for continuance.

Amilpas relies on *United States v. Jones*, 132 S. Ct. 945 (2012), to argue for reversal. In *Jones*, the Supreme Court held that the government's placement of a GPS tracking device on a subject's vehicle and subsequent use of information obtained from the GPS device to secure his arrest warrant amounted to an illegal search in violation of the Fourth Amendment. *Id.* at 947–49. Two significant factors distinguish *Jones* from this case. First, in *Jones*, the government tracked the vehicle's movements in an effort to secure evidence to obtain an indictment for drug trafficking conspiracy charges. *Id.* at 946. Here, a warrant for Amilpas's arrest for evading arrest had issued before police obtained Amilpas's cell phone data, and the police requested and used the cell phone data merely to locate Amilpas in order to execute the outstanding warrant. Second, in *Jones*, the government obtained information about the defendant's location by mounting a GPS tracking device to his vehicle. *Id.* at 949. Here, Sprint-Nextel compiled and stored Amilpas's cell phone data for its own business purposes and Officer Vigil obtained that data from Sprint-Nextel, rather than gathering the data himself. *See Barfield v. State*, 416 S.W.3d 743, 748–49 (Tex. App.—Houston [14th Dist.] 2013,

8

no pet.) (trial court did not violate exclusionary rule in admitting cell tower records and expert testimony because police obtaining information and data related to appellant's cell phone that third-party cell phone provider had collected and stored for its own business purposes did not violate appellant's reasonable privacy expectations under Fourth Amendment).  Accordingly, *Jones* is distinguishable and does not support Amilpas's argument.

As the State correctly notes, article 18.21 of the Code of Criminal Procedure makes no mention of the circumstances under which an order for the disclosure of pen register information may be unsealed.  *See* TEX. CODE CRIM. PROC. ANN. art. 18.21, §2(g) ("The district court shall seal an application and order granted under this article" in which a police officer seeks order for information related to cell tower records).  That does not end the inquiry, however, because Amilpas does not contend that the trial court's refusal to unseal the order violated article 18.21 of the Code of Criminal Procedure.  Rather, Amilpas's complaints are constitutional.  But, even constitutional errors must be harmful in order to warrant reversal.  TEX. R. APP. P. 44.2(a) (constitutional error warrants reversal "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment").  Here, we need not decide whether any of Amilpas's claims of constitutional error have merit because even assuming that the trial

9

court's refusal to unseal the article 18.21 order amounted to a constitutional error, we conclude that it would have been harmless beyond a reasonable doubt.

*Mazuca* guides our analysis of whether Amilpas can show harm resulting from an alleged constitutional error. It sets forth a three-factor test we use to determine whether discovery of physical evidence is too attenuated from a violation of law to warrant suppression. *See Mazuca*, 375 S.W.3d at 301–07. The first of the three factors we consider is the temporal proximity of the violation of law and the seizure of physical evidence. *See id.* at 306. Here, the officers seized the cocaine within only a few moments of locating Amilpas using the pen register data. Thus, this factor in isolation favors suppression. *See McKinney v. State*, 444 S.W.3d 128, 135 (Tex. App.—San Antonio 2014, pet. ref'd) (temporal proximity weighed in favor of suppression where officer searched defendant and found cocaine immediately after detaining him). However, as the Court of Criminal Appeals recognized in *Mazuca*, this factor "will sometimes prove to be, in the context of the seizure of physical evidence, 'the least important factor'—at least relative to the other two." *Mazuca*, 375 S.W.3d at 306.

Under the second *Mazuca* factor, we consider the presence of intervening circumstances—that is, we consider what occurred between the time the suspect was detained using the pen register data and the time the challenged evidence was seized. *Id.* at 306. Here, the officers observed Amilpas commit a crime—

10

possession of cocaine—in the cell phone store between the time they arrived to execute the arrest warrant for evading arrest and the time they seized the cocaine. Thus, even assuming police obtained the article 18.21 order and located Amilpas in violation of law, their observation of Amilpas committing the charged offense was a significant intervening circumstance between the time of the purported violation of law and the discovery of evidence. We conclude that this factor weighs against suppression. *See Mazuca*, 375 S.W.3d at 306 (recognizing that evidence need not be suppressed where there are intervening circumstances between the discovery of physical evidence and the violation of law); *Roberts v. State*, No. 03-12-00194-CR, 2014 WL 1910428, at *1–2 (Tex. App.—Austin May 8, 2014, no pet.) (mem. op., not designated for publication) ("need not address the propriety of [officer's] actions" where officer initially stopped appellant without justification, but subsequently observed appellant drive with headlights off, which was a violation of the law that independently justified the stop); *Matienza v. State*, 699 S.W.2d 626, 628 (Tex. App.—Dallas 1985, pet. ref'd) (after officer detained defendant, defendant pulled gun and pointed it at officer, which constituted intervening offense that purged taint of any illegality of initial detention).

Under the third *Mazuca* factor, we consider the purposefulness or flagrancy of the police misconduct. *See Mazuca*, 375 S.W.3d at 306 (considering "whether the police have deliberately perpetrated what they know to be an illegal stop in the

11

specific hope or expectation that it will generate some legitimate after-the-fact justification to arrest and/or search, or they have otherwise conducted themselves in particularly egregious disregard of the right to privacy and/or personal integrity that the Fourth Amendment protects"). Here, the officers obtained the order directed to Sprint-Nextel in accordance with the statute's terms and acted pursuant to the order in locating Amilpas to execute his arrest warrant for evading arrest. We conclude that there is no indication in the record that the officers engaged in misconduct of any sort. *See Mazuca*, 375 S.W.3d at 310 (behavior was not so particularly purposeful or flagrant that intervening factor could not purge the taint where officer "never went beyond the bounds of what would have been constitutionally permissible had the stop been justified at its inception").

Having considered all three *Mazuca* factors, we conclude that the significant intervening circumstance between the officers' detention of Amilpas and their seizure of the challenged evidence—their observation of Amilpas possessing cocaine—together with the absence of any misconduct on the part of police renders the evidence sufficiently attenuated from the alleged violation of law in obtaining and failing to disclose the contents of the article 18.21 order that the trial court would not have erred in denying a motion to suppress the cocaine even if Amilpas had learned of and challenged the article 18.21 order pre-trial. For the same reason, we overrule Amilpas's arguments that the trial court's failure to unseal the

article 18.21 order violated his right to evaluate evidence against him, subpoena rebuttal witnesses, and confront witnesses, as well as his right to due process of law. Because any theoretical infirmity in the article 18.21 order would have been sufficiently attenuated from the seizure of evidence under *Mazuca*, article 38.23 would not require suppression. Accordingly, we hold that constitutional error in the trial court's refusal to unseal the court order, if any, would have been harmless beyond a reasonable doubt. *See* TEX. R. APP. P. 44.2(a).

We overrule Amilpas's first and second issues.

## Sufficiency of the Evidence

In his third issue, Amilpas contends that the evidence was legally insufficient to support his conviction.

## A. Standard of Review

Evidence is insufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d

772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We likewise defer to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence. *Gonzalez*, 337 S.W.3d at 479 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). The reviewing court must also "consider all evidence which the jury was permitted, whether rightly or wrongly, to consider." *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988) (en banc) (emphasis omitted).

## B.    Applicable Law

To prove unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether the evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Id.* at 405–06. This "affirmative links rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* at 406 (internal quotations omitted). Thus, "[w]hen the accused is not in

exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981) (citing *Wiersing v. State*, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978)).

Though not an exhaustive list, the Court of Criminal Appeals has recognized the following affirmative links:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *see also Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). It is not the number of links that is dispositive, but rather, the logical force of all the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162. Therefore, each case must be examined according to its own facts on a case-by-case basis.

*Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A factor that contributes to sufficiency in one situation may be of little value under a different set of facts. *Id.*

## C. Analysis

Amilpas contends that there is legally insufficient evidence to support his conviction because the police officers did not see that the item he threw over the counter was cocaine, there was evidence that the item he threw was a knife, and there is no evidence of several affirmative links.

We conclude sufficient evidence connects Amilpas with the cocaine. First, Amilpas was present at the scene when police arrived. *See Evans*, 202 S.W.3d at 162, n. 12 (presence when search conducted is affirmative link). Second, Officer Vigil and Sergeant Vega both testified that Amilpas would not obey their commands until after he removed an object from his clothing and threw it over the store counter. *See id.* (furtive gestures and conduct evidencing consciousness of guilt are affirmative links). Third, both officers testified that they saw Amilpas throw an object behind the counter, and Officer Yanez testified that he found seven small plastic bags containing cocaine inside a larger plastic bag in the location in which Sergeant Vega told Officer Yanez the object landed. The cocaine was in plain view, on the floor of the store, and was located near where Amilpas had been standing when he threw the object. *See id.* (whether contraband was in plain view,

16

as well as proximity and accessibility of contraband to appellant are affirmative links). Fourth, Amilpas had approximately $3,070 in cash on his person. *See id.* (large amount of cash on defendant's person is affirmative link). Finally, the cocaine weighed approximately 64.7 grams and had a value between $2,200 and $3,000. *See Roberson*, 80 S.W.3d at 740 ("The amount of contraband found is a factor we can consider in determining if an affirmative link exists.").

Amilpas contends that the judgment must be reversed because evidence of many of the affirmative links is absent in this case. In support of his argument, Amilpas cites to *Allen v. State*, 249 S.W.3d 680 (Tex. App.—Austin 2008, no pet.), because the *Allen* court held there was insufficient evidence to support Allen's conviction where many links were absent. In *Allen*, the evidence showed that Allen did not live at the apartment where the cocaine was found, no cocaine was found on his person, Allen did not attempt to flee or hide any items when officers entered, Allen cooperated with the police and made no furitive gestures, and most of the cocaine was hidden in a different room. *Id.* at 694, 702. Although several of the same links are absent in this case, unlike in *Allen*, here, there is evidence that (1) Amilpas was carrying a significant amount of cash and (2) attempted to rid himself of the cocaine that he carried on his person when the officers entered the store. Accordingly, *Allen* does not support Amilpas's argument. *See id.*; *Lair v. State*, 265 S.W.3d 580, 588 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)

(evidence was sufficient to support conviction where nine links were not present because "possible links that do not exist . . . do not negate the links that are present"); *see also Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present.").

Amilpas also contends that evidence that he threw an object over the counter is insufficient evidence to link him to the cocaine because (1) Sergeant Vega testified that the object appeared to be a knife and (2) other people who may have possessed the cocaine were present in the store. While there was some evidence from which a rational juror could infer that the object Amilpas threw was a knife, the jury rejected that conclusion. We presume the jury resolved conflicting evidence in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012); *see also Henson v. State*, 388 S.W.3d 762, 773 (Tex. App.—Houston [1st Dist.] 2012) ("verdict of guilty is an implicit finding rejecting the defendant's [defensive] theory"), *aff'd*, 407 S.W.3d 764 (Tex. Crim. App. 2013).

Considering all of the evidence in the light most favorable to the verdict, we conclude that sufficient affirmative links connect Amilpas to the cocaine and that a rational trier of fact could have found beyond a reasonable doubt that Amilpas exercised care, custody, or control over the cocaine knowing that it was

contraband. *See Evans*, 202 S.W.3d at 166 ("amply sufficient evidence connecting appellant to the actual care, custody, control or management of the cocaine" when viewing circumstantial evidence "in combination and its sum total"); *Noah v. State*, 495 S.W.2d 260, 263 (Tex. Crim. App. 1973) (sufficient evidence to support possession of heroin conviction where officer saw defendant throw package, he returned to place where package had been thrown to recover it three to five minutes after defendant had thrown it, and package contained heroin); *Sneed v. State*, 875 S.W.2d 792, 795 (Tex. App.—Fort Worth 1994, no pet.) (although defendant did not have exclusive control over place where cocaine was found, evidence of possession sufficient where officer saw defendant take cocaine out of pocket and throw it on floor).

We overrule Amilpas's third issue.

**Permissible Jury Argument**

In his fourth issue, Amilpas contends that the prosecutor made an improper closing argument because he referred to Amilpas's subpoena power, which was an attempt to shift the burden of proof.

A.    **Applicable Law**

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.— Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267

(Tex. Crim. App. 1991) (en banc)). The approved areas of jury argument are (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc); *Andrade v. State*, 246 S.W.3d 217, 229–30 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). In examining challenges to a jury argument, a court considers the remark in the context in which it appears. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

Courts have held that, during jury argument, the State may comment on a defendant's failure to present evidence in his favor. *See Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000) ("We have held that the prosecutor may comment on the defendant's failure to produce witnesses and evidence so long as the remark does not fault the defendant for exercising his right not to testify."); *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995) ( "[I]f the language can reasonably be construed to refer to appellant's failure to produce evidence other than his own testimony, the comment is not improper."). Jury argument pointing out that the defendant has failed to present evidence in his favor does not shift the burden of proof but instead summarizes the state of the evidence and is a reasonable deduction from the evidence. *See Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that prosecutor's

statement that "[i]f there is something out there that is going to exonerate you, you want to make it known" was permissible jury argument).

## B. Analysis

Amilpas complains that the prosecutor's closing argument was improper because he referred to Amilpas's subpoena power and the fact that no witness had testified that the cocaine found in the store belonged to her. Before the prosecutor made the argument, Amilpas's counsel argued that Amilpas's girlfriend was also present at the store and that the cocaine could have been hers.

The prosecutor responded:

[T]he girl who was next to the defendant in that store was between 5 and 8 feet away dealing with a clerk as they entered. More importantly, the only person who threw anything behind the counter, the only person who possessed the cocaine those officers found wasn't some mysterious girl. It was the defendant.

Ladies and gentlemen, keep in mind the burden is with the State and the State has the burden alone. [Amilpas] has rights, including the right of subpoena power. Did you see any girl standing here today saying: Yeah, it was my cocaine?

Amilpas objected that the State was "shifting the burden of proof," and the trial court overruled his objection.

Having considered the allegedly improper argument in context, we conclude that the prosecutor's statement was a permissible response to Amilpas's counsel's argument because it was a remark on Amilpas's failure to produce evidence from other sources. *See Wesbrook*, 29 S.W.3d at 115 (answer to argument of opposing

21

counsel is an approved area of jury argument); *Harris v. State*, 122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pet. ref'd) (prosecutor's comment "about the subpoena power of a defendant is proper if it refers to the defendant's failure to produce evidence from other sources").  Accordingly, the prosecutor's statement did not shift the burden of proof to Amilpas.  *See Baines v. State*, 401 S.W.3d 104, 109 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (prosecutor's statement that defendant "has the same subpoena power" and could have called witnesses to testify in his defense was "a permissible remark about appellant's failure to produce evidence in his favor on his defense and did not shift the burden of proof to appellant").  We hold that the trial court did not err in overruling Amilpas's objection to improper jury argument.

We overrule Amilpas's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).